JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-223 JGB (SPx)** | Date | April 6, 2023 |
|---|---|---|---|
| Title | *Marc Garrett v. Mercedez-Benz USA, LLC et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 12); and (2) VACATING the April 10, 2023 Hearing (IN CHAMBERS)**

     Before the Court is a motion to remand filed by Plaintiff Marc Garrett. ("Motion," Dkt. No. 12.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and VACATES the April 10, 2023 hearing.

### I.   BACKGROUND

     On January 6, 2023 Plaintiff filed a complaint in the Superior Court of the State of California for the County of Riverside against Defendants Mercedes-Benz USA, LLC ("MBUSA" or "Defendant") and Does 1-10. ("Notice of Removal," Dkt. No. 1-1, Ex. A, "Complaint."). The Complaint alleges three causes of action: (1) violation of the Song-Beverly Consumer Warrant Act (the "Song-Beverly Act"), Cal. Civ. Code § 1790 et seq. – breach of express warranty; (2) violation of the Song-Beverly Act – breach of implied warranty; and (3) violation of California Business and Professions Code, Cal. Civ. Code § 17200. (See id.)

     On February 10, 2023, Defendant removed the action. (Notice of Removal.) On February 17, 2023, Defendant filed an answer. ("Answer," Dkt. No. 8.)

     On March 8, 2023, Plaintiff filed the Motion. (Motion.) On March 20, 2023, Defendant filed an opposition. ("Opposition," Dkt. No. 13.) In support of the Opposition, Defendant filed a declaration of Sasha Bassi ("Bassi Declaration," Dkt. No. 13-1.) On March 27, 2023, Plaintiff replied. ("Reply," Dkt. No. 14.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 683–85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

When a state-court complaint alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996). Conversely, "[w]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018). This sum is determined as of the date of removal. Id. at 790. "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." Lewis v. Verizon Comm'ns. Inc., 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" Campbell v. Vitran Express, Inc., 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). Where the plaintiff contests the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied." Id. at 82.

//

### III.  DISCUSSION

Defendant removed the action on the basis of diversity jurisdiction; Plaintiff argues that the Court lacks subject matter jurisdiction over the case because the amount in controversy is less than $75,000.  (See Motion; Reply.)

**A.  Complete Diversity**

Defendant provides evidence that Plaintiff is a citizen of California, while MBUSA is a citizen of Delaware and Georgia.  (Notice of Removal; Opposition at 1; Bassi Declaration ¶¶ 5-6.)  Diversity of citizenship is uncontested.

**B.  Amount in Controversy**

The Court finds that the amount in controversy is not facially evident from the Complaint.  The Complaint does not specify any monetary value sought; the sole reference to a dollar figure in the Complaint is that it invoked the state court's unlimited jurisdiction and thus "damages exceed $25,000."  (See Complaint.)  There are no specific damages pled in the body of the Complaint or prayed for in the Prayer for Relief.  As such, it does not allege "a sufficiently specific total in amount in controversy."  Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007).  Further, "it is unclear whether *all* [the] damages are subsumed within the request" for damages in excess of $25,000.  Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original).  Accordingly, the Court "must determine if [Defendant] ha[s] shown by a preponderance of the evidence that the amount in controversy exceeds $75,000."  Id.

**1.  Actual Damages**

Plaintiff purchased a 2019 CPO Mercedes-Benz C300 on or about December 28, 2021 (the "Vehicle").  (See Complaint; Opposition at 4.)  Defendant argues that the Vehicle itself is valued at $51,696.00, based on "the total amount of payments Plaintiff is to have paid after making all the payments as scheduled[.]"  (Opposition at 4.)  For that figure, Defendant cites the Bassi Declaration and an exhibit in support.  (See id.; Bassi Declaration; Bassi Declaration Ex. C.)  Though the Court rejects this contention on the grounds below, there is another reason it gives the Court considerable pause: Defendant's own valuation of the vehicle has doubled since Plaintiff contested removal.  On February 10, 2023, when Defendant removed the action, it declared, again based on a sworn declaration of counsel, Sasha Bassi, that the value of the Vehicle with "standard equipment," 39,000 miles on the odometer and in the Riverside County market is $25,077.  (Notice of Removal ¶ 10; Notice of Removal Ex. B.)  A little more than a month later, Defendant has apparently realized that that figure may be too low to survive a motion to remand, for in the Opposition MBUSA has now decided it is worth twice as much.  If that is so, Mr. Garrett would surely wish to reconsider the basis for this lawsuit—that Defendant sold him a "lemon" and that he wants his money back—for it is the rare used car indeed that grows exponentially in value, rather than depreciating like every other.

The discrepancy is likely explained by the fact that Defendant did not bother to find the sales contract at the time of removal; fortunately, MBUSA has attached the Retail Installment Sales Contract (RISC) to the Opposition. (See "RISC," Opposition Ex. C, Dkt. No. 13-4.) Defendant argues that the Court should apply the total of the payments owed by Plaintiff toward the amount in controversy, or $51,696.00. (See Opposition at 4; RISC.) However, because the Song-Beverly Act provides that "the actual price paid or payable by the buyer includes any finance charges," courts, including this one, have found the total cash price a more appropriate measure of actual damages. See Alvarado v. FCA US, LLC, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (applying "the total cash price paid for the subject vehicle"); Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle"). Accordingly, the Court uses the total cash price in the RISC of $41,988.00 as the initial amount for the calculation of actual damages. (RISC.)

Next, under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C). The RISC lists the odometer reading as 14,578 at the time of purchase. (RISC.) Cal. Civ. Code section 1793.2(d)(2)(C) provides a formula to calculate the mileage offset:

$$\frac{N}{120,000} \times cash\ price$$

(N = number of miles driven before first repair related to the alleged noncomformity)

Cal. Civ. Code § 1793.2(d)(2)(C). The parties do not brief the issue of when Plaintiff took the Vehicle for the first repair related to alleged noncomformity, but Defendant has submitted evidence of a repair order dated January 4, 2022 that indicates various noncomformities, including an "internal fault" with the right shifter handle. ("Repair Order," Bassi Declaration Ex. D.) Based on its review of the Complaint and the evidence submitted by the parties, the Court concludes that this Repair Order represents the first repair for a noncomformity, which occurred at 21,643 miles. (Id.) As such, Mr. Garrett appears to have driven the Vehicle 7,065 miles before the first attempted repair. The Court applies the following formula to generate the statutory offset:

$$\frac{7,065}{120,000} \times \$41,988.00$$

This results in an offset of $2,472.04. Subtracted from the cash price of $41,988.00, the Court finds that $39,515.96 is the appropriate measure of damages allegedly suffered by Mr. Garrett under the Song-Beverly Act.

### 2. Civil Penalties

The Song-Beverly Act provides that a civil penalty of two times the amount of actual damages is available pursuant to Sections 1794(c) and 1794(e) of the California Civil Code. The Complaint only alleges that Plaintiff is entitled to civil penalties under Section 1794(c), not Section 1794(e). (See Complaint ¶ 24.) Defendant argues that the Court must include this civil penalty in the amount in controversy calculation because Plaintiff could be entitled to recover it under the statute. (Opposition at 6-7.) In its view, "Plaintiff's bare allegations of seeking restitution is sufficient for calculating the total amount of damages in the amount in controversy," as is Plaintiff's prayer for a "civil penalty of two times plaintiff's actual damages" in the Complaint. (Id. at 7.)

"Defendant is mistaken. 'The civil penalty under California Civil Code § 1794(c) cannot simply be assumed.'" Pennon v. Subaru of Am., 2022 WL 2208578, at *2 (C.D. Cal. June 17, 2022) (quoting Castillo v. FCA USA, LLC, 2019 WL 6607006, at *2 (S.D. Cal. Dec. 5, 2019)). "To satisfy its burden, the removing party 'must make some effort to justify the assumption by, for example, pointing to allegations in the [c]omplaint suggesting award of a civil penalty would be appropriate, and providing evidence—such as verdicts or judgments from similar cases—regarding the likely amount of the penalty.'" Id. (quoting Zawaideh v. BMW of N. Am., LLC, 2018 WL 1805103, at *2 (S.D. Cal. Apr. 17, 2018)).

As in Pennon, MBUSA "has made no serious attempt to justify the inclusion of a civil penalty in the calculation of the jurisdictional amount. Civil penalties are available under § 1794(c) only if a defendant's violations are willful." 2022 WL 2208578, at *2; see also Melendez v. Subaru of Am., Inc., 2021 WL 1929539, at *2 (C.D. Cal. May 13, 2021). The sole allegations in the Complaint regarding willfullness are vague and conclusory. (See Complaint ¶¶ 9, 23) ("The multiple failed inspection and repair attempts [of wholly unspecified nature, including what the defect was and the dates of any alleged repair attempts] have proven willfully unsuccessful in resolving the issues"). In the Opposition, Defendant has not bothered to cite a single specific allegation from the Complaint, raise any actual argument regarding "willfullness" or apply analogous precedent to the facts of this case. (See Opposition.) Courts consistently find such a showing insufficient to justify inclusion of civil penalties in the amount in controversy. See, e.g., Pennon, 2022 WL 2208578, at *2 (finding that reliance "on a conclusory allegation in that complaint" is "insufficient"); Melendez, 2021 WL 1929539, at *2 ("Plaintiff's only allegations remotely inferring willfulness are that Subaru intentionally declined to cure the Vehicle's defects. Such a vague contention does not satisfy Subaru's burden.") (internal citations omitted); Castillo, 2019 WL 6607006, at *2 ("Simply assuming a civil penalty award is inconsistent with the principle that the defendant 'must provide evidence that it is 'more likely than not' that the amount in controversy' requirement is satisfied. Absent any specific argument or evidence for its inclusion, the Court will exclude the civil penalty under California Civil Code § 1794(c) from its amount-in-controversy calculation.") (internal citation omitted); Khachatryan v. BMW of N. Am., LLC, 2021 WL 927266, at *2 (C.D. Cal. Mar. 10, 2021) ("BMW fails to identify which allegations in the Complaint would justify such an award; nor does BMW submit evidence regarding the size of civil penalties awarded in analogous cases."); Sanchez v. Ford Motor Co.,

2018 WL 6787354, at *2-3 (C.D. Cal. Dec. 4, 2018) (remanding action where civil penalties were "too speculative for inclusion in the amount-in-controversy"); Chajon v. Ford Motor Company, 2019 WL 994019, at *3-4 (C.D. Cal., Jan. 8, 2019) (remanding action on same basis); Eberle v. Jaguar Land Rover N. Am., LLC, 2018 WL 4674598, at *2 (C.D. Cal. Sept. 26, 2018) (same); Lawrence v. FCA US LLC, 2016 WL 5921059, at *4 (C.D. Cal. Oct. 11, 2016) (same); Makol v. Jaguar Land Rover North America, LLC, 2018 WL 3194424, at *3 (N.D. Cal., June 28, 2018) (same); Herko v. FCA US, LLC, 2019 WL 5587140, at *2 (S.D. Cal. Oct. 30, 2019) (same); Chavez v. FCA US LLC, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) (same); Lopez v. FCA US LLC, 2019 WL 4450427, at *2 (C.D. Cal. Sept. 16, 2019) (same); Zawaideh, 2018 WL 1805103, at *2-3 (S.D. Cal. Apr. 17, 2018) (same). Indeed, mere days ago, another Central District court found a lack of subject matter jurisdiction for identical reasons on indistinguishable facts. See Jesus Casillas v. Nissan North America, Inc., 2023 WL 2634285, at *3-4 (C.D. Cal. Mar. 23, 2023).

Essentially, the only argument Defendant has raised with regard to civil penalties is that one court, Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004 (N.D. Cal. 2002), included them on a fairly conclusory showing of "willfulness," so this Court should, too. (See Opposition at 4-5.) The weight of authority from more recent cases demonstrates that Brady has fallen out of favor, for courts have consistently declined to follow its approach over the past twenty years, or rejected arguments that do not carefully apply Brady to the facts at hand. See, e.g., Zawaideh, 2018 WL 1805103, at *2 (observing that "Brady appears to have simply assumed a civil penalty would be awarded," discussing other case law that provides that, "rather than simply assume that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption by, for example, poining to allegations in the Complaint suggesting award of a civil penalty would be appropriate, and providing evidence—such as verdicts or judgments from similar cases—regarding the likely amount of the penalty," and therefore declining to follow Brady); Khachatryan, 2021 WL 927266, at *3 ("Aside from citing Brady, BMW makes no effort to explain why the amount in controversy should include $75,463.30 (double the value of the $37,731.65 lease agreement). BMW fails to identify which allegations in the Complaint would justify such an award; nor does BMW submit evidence regarding the size of civil penalties awarded in analogous cases."). The Court agrees with these recent cases and declines to follow the approach in Brady, 243 F. Supp. 2d 1004, or accept Defendant's argument, which is identical to that rejected by these courts: "[A]side from citing Brady, Defendant makes no effort to explain why the amount in controversy should include a civil penalty . . . Defendant fails to identify which allegations in the Complaint would justify such an award; nor does Defendant submit evidence regarding the size of civil penalties awarded in analogous cases." Zawaideh, 2018 WL 1805103, at *3.

Under Ninth Circuit authority requiring that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal," Gaus, 980 F.2d at 566, "Defendant has the burden of proving that removal was proper in this case. Assumptions do not satisfy that burden. Yet that is virtually all Defendant has offered." Pennon, 2022 WL 2208578, at *2. As such, the Court finds the amount of civil penalties "too speculative to include when calculating the amount-in-controversy." Casillas, 2023 WL 2634285, at *3.

### 3. Attorney's Fees

Finally, Defendant argues that Plaintiff's request for attorneys' fees should be included in the amount in controversy calculation. (Opposition at 7.) MBUSA claims that, "even where the plaintiff is awarded a relatively meager amount of damages in a Song-Beverly 'lemon law' action, plaintiffs' attorneys are commonly awarded over $100,000 in fees." (Id. at 8.) For that proposition, Defendant cites to a request for judicial notice with two exhibits. (See id.) As Plaintiff observes in the Reply, there is no request for judicial notice attached to the Opposition. (See Reply at 4.) Even so, Defendant has not filed a notice of errata attaching whatever exhibits purportedly demonstrate such high fee awards, assuming they exist.

Courts generally include attorney's fees recoverable by statute in determination of the amount in controversy. Fritsch, 899 F. 3d at 794 ; see also Guglielmino, 506 F.3d at 700; Galt G/S. v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). "The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." Schneider, 441 F. Supp. 3d at 914; see also Reyes v. Staples Off. Superstore, LLC, 2019 WL 4187847, at *4 (C.D. Cal. Sept. 3, 2019) ("[C]ourts should still reject a defendant's calculation of future attorneys' fees if it fails to satisfy its burden of proof using 'summary-judgment-type evidence'.") (citing Fritsch, 899 F.3d at 795)). In Schneider, the court found insufficient the defendant's submission of a single declaration that "claims for attorneys' fees in these cases regularly approaches or exceeds $50,000." 441 F. Supp. 3d at 914. Evidence of a recent fee award granted to the plaintiff's counsel was also inadequate. The defendants' claim "that the same counsel appears in each case and that the subject-matter of the cases are the same" failed "to provide the Court with specific evidence showing that the attorneys' fees *in this case* are 'more likely than not' to exceed $75,000." Id. (emphasis in original).

In both the Notice of Removal and the Opposition, the sole contention MBUSA has raised is that in two cases, Goglin v. BMW of N. Am., LLC, 4 Cal. App. 5th 462, 470 (2016) and Gezalyan v. Mercedes-Benz USA, LLC, 697 F. Supp. 2d 1168, 1171 (C.D. Cal. 2010), the plaintiff recovered substantial attorney's fee awards. (See Notice of Removal ¶ 12; Opposition at 7-8.) Defendant has made no attempt to even summarize the facts of those cases, let alone explain why they are applicable here. MBUSA has not submitted a declaration that includes, for example, typical hourly rates in Song-Beverly Act cases or billing records from past cases handled by counsel. (See id.) Courts consistently reject this kind of barebones showing, which falls far short of "summary judgment-type evidence." See, e.g., Schneider, 441 F. Supp. 3d at 914; Melendez, 2021 WL 1929539, at *2 ("Because Subaru presents no substantive argument or evidence concerning fees, the Court has no basis to include them in the amount in controversy."); Eberle, 2018 WL 4674598, at *3 ("Courts have been reluctant to estimate reasonably attorneys' fees without knowing what the attorneys in the case bill, or being provided with 'evidence of attorneys' fees awards in similar cases,' and have found information far more specific than this to be insufficient for the purposes of including attorneys' fees in the amount in controversy.") (citations omitted); Pennon, 2022 WL 2208578, at *3 n.1; Makol, 2018 WL 3194424, at *3; Castillo, 2019 WL 6607006, at *2; Chavez, 2020 WL 468909, at *2. Accordingly, the Court

concludes that Defendant has not met its burden to show by a properandance of the evidence that any amount of attorney's fees can be used to satisfy the amount in controversy requirement.

4. **Summary**

In sum, Defendant has at best established that the amount in controversy is $39,515.96. MBUSA has failed to meet its burden to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. Since the Court lacks subject matter jurisdiction over the Complaint, it GRANTS the Motion.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** this action to the Superior Court of the State of California for the County of Riverside. The April 10, 2023 hearing is **VACATED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**